**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**PIKEVILLE**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 7:14-2-KKC-2** |
| | **and** |
| **Plaintiff,** | **CIVIL NO. 7:15-105-KKC** |
| | |
| **V.** | |
| | |
| **EARNEST BRADLEY HALL,** | **OPINION** |
| | **AND ORDER** |
| **Defendant.** | |

*** *** ***

Earnest Bradley Hall, *pro se*, moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.  (DE 54; DE 55.)  The Government has responded (DE 69), and Hall has replied (DE 73).  Upon consideration of these filings and the record in this case, for the reasons given below, Hall's § 2255 motion will be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Hall pled guilty pursuant to a plea agreement (DE 32) to receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  (DE 34.)  In November 2014, he was sentenced to 180 months in prison, the statutory mandatory minimum term of incarceration as well as the agreed recommended term in the parties' plea agreement, followed by a lifetime term of supervised release.  (DE 31; DE 34.)  Hall's *pro se* appeal (DE 35) was dismissed by the Sixth Circuit as untimely filed.  (DE 43.)

In October 2015 Hall filed a writ of habeas corpus, construed as a § 2255 motion (DE 45), which the presiding and then District Judge Amul Thapar later dismissed (DE 63) upon Hall's motion (DE 56).  In November 2015 Hall filed a § 2255 motion on the standard form, listing four claims:  (1) "Ineffective assistance of counsel:  counsel failed to file notice of appeal

timely"; (2) "Ineffective assistance of counsel:  counsel failed to file an appeal or an *Anders* brief";[1] (3) "Ineffective assistance of counsel:  counsel failed to fully investigate the case"; and (4) "Counsel failed to adequately represent client and coerced client to plead guilty telling him that he would receive life if not."[2]  (DE 54 at 5-9 (minor alterations for readability)).)  The Government responds that Hall's § 2255 claims are meritless.  (DE 69.)

## II.  ANALYSIS

Under 28 U.S.C. § 2255(a), a federal prisoner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack.  To succeed on a § 2255 motion alleging constitutional error, a federal prisoner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

To obtain relief for a non-constitutional error, he "must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process."  *Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).  In sum, a federal prisoner must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir.

---

[1] *See Anders v. California*, 386 U.S. 738 (1967).

[2] Hall has since filed various additional motions (*see* DE 97—DE 104; DE 107; DE 108), which the Court will address in a separate order.

2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).  And he must prove his allegations by a preponderance of the evidence.  *Pough*, 442 F.3d at 964.

A.      **Hall's Ineffective Assistance of Counsel Claims**

Hall's four claims argue that this counsel was ineffective.  (DE 54 at 5-9.)  As noted above, only certain claims can be brought on collateral review.  One of those is when a constitutional violation has occurred, which is what Hall relies upon here.  Alleging ineffective assistance of counsel is not just any perceived error by counsel, but an error of constitutional magnitude in the sense that the act or omission of counsel, if shown, would violate Hall's Sixth Amendment right to the effective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, Defendant must satisfy the two-pronged test of *Strickland v. Washington,* 466 U.S. 668 (1984), requiring him to establish first, that counsel's performance was deficient and second, that the deficient performance prejudiced the defense.  *Strickland,* 466 U.S. at 687.  To prove deficient performance, Hall must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  Defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances."  *Id.* at 688.  Regarding the deficiency prong, Defendant "must identify specific 'acts or omissions [that] were outside the wide range of professionally competent assistance.'"  *Borch v. United States,* 47 F.3d 1167 (6th Cir. 1995) (quoting *Strickland,* 466 U.S. at 690)).  In order to prove prejudice, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland,* 466 U.S. at 694.  When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before

3

the judge or jury." *Id*. at 695. "When deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States,* 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland,* 466 U.S. at 697)).

### 1.   Alleged Appeal Failures by Counsel

Hall's first two grounds for relief asserted in his § 2255 motion both pertain to trial counsel's alleged ineffectiveness concerning a direct appeal of Hall's criminal conviction. In ground one, Hall asserts ineffective assistance of his trial counsel because "Counsel Failed to File Notice of Appeal Timely." (DE 54 at 4.) In ground two, Hall asserts ineffective assistance of his trial counsel because "Counsel Failed to File Appeal or Anders Brief." (DE 54 at 5.) These two grounds are intertwined, as are Hall's arguments in support of these two grounds set forth in his memorandum (DE 55) and his reply (DE 73).

Both claims arise from Hall's mistaken belief that his court-appointed trial counsel, James Craft, was constitutionally obligated to 1) file a timely notice of appeal on Hall's behalf, and 2) to continue to represent him on appeal, including filing an appellate brief directed to the merits or, at least, a brief pursuant to *Anders v. California,* 386 U.S. 738 (1967). But because Attorney Craft had no such obligations in this case, Hall is unable to show that counsel rendered constitutionally deficient performance and therefore these two grounds are without merit.

A defendant has a constitutional right to pursue a direct appeal of his criminal conviction and sentence. *Coppedge v. United States,* 369 U.S. 438, 444 (1962). In addition, "[a] lawyer's duty to his client does not cease after the entry of a judgment of conviction. Rather, '[t]rial counsel in criminal cases, whether retained or appointed . . . is responsible for the continued representation of the client on appeal until specifically relieved by the Court of Appeals.'" *United States v. Pankey,* 879 F.2d 864, 1989 WL 78939, at *5 (6th Cir. 1989)

4

(unpublished table decision) (quoting Sixth Circuit Rule 12(a)). Hall confuses his general right to pursue an appeal and to have trial counsel represent him on that direct appeal as imposing a mandatory obligation on counsel to file an appeal and continue to represent him in that appeal unless the appellate court permits withdrawal.

Hall maintains he is entitled to § 2255 relief because trial counsel failed to file a notice of appeal. The "supporting facts" section of the form § 2255 motion directs Hall, "[d]o not argue or cite law. Just state the specific facts that support your claim." Hall writes, "My counsel did not file a timely notice of appeal.  Didn't file a Notice of Appeal at all." (DE 54 at 4.)  Hall offers no other factual information in his § 2255 motion filing. A timely-filed notice of appeal would, of course, have permitted Hall to pursue his direct appeal before the Sixth Circuit, rather than have his direct appeal dismissed for being untimely initiated.

The test for claims of ineffective assistance of counsel provided in *Strickland* also applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. *Roe v. Flores-Ortega,* 528 U.S. 470, 476 (2000). To show that counsel performed deficiently, a defendant must demonstrate either that the attorney disregarded a client's instructions to file a notice of appeal or failed to consult with the defendant about an appeal when counsel knew or would have known that the defendant might want to appeal. *Flores-Ortega,* 528 U.S. at 477-78.  If counsel failed to file a notice of appeal after being instructed or directed to do so, counsel has not only performed deficiently, but prejudice to the defendant is also presumed since defendant has been deprived of the opportunity of an appeal proceeding. Where an attorney has failed to consult with his client regarding an appeal in circumstances where counsel knew or should have known that defendant might want to appeal, although deficient performance has been shown, the defendant must still demonstrate prejudice.  This requires that defendant demonstrate a reasonable probability

that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. *Flores-Ortega,* 528 U.S. at 484.

It is undisputed that attorney Craft did not file a notice of appeal. Hall did so *pro se* and his appeal was dismissed because his notice was filed late. Hall's arguments about Craft's failure to file a notice of appeal are two-fold: one, that counsel should have automatically filed a notice of appeal and failed to, thereby rendering deficient performance; and two, that counsel failed to file a notice of appeal "as he [Hall] requested," also constituting deficient performance.

Hall contends that, because he has a right to take a direct appeal, his lawyer is obligated to file a notice of appeal unless he specifically tells him he does not wish to appeal. In his memorandum in support (DE 55), Hall seems to advocate a view that trial counsel's appeal and further representation of him are required and that he was "abandoned by trial counsel at a critical stage of his proceedings, i.e. appeal process." (DE 55 at 3.) Citing to *Coppedge v. United States,* 369 U.S. 438, 441 (1962), Hall points out that "[p]ersons convicted of crimes in federal district court have a right to a direct appeal." (DE 55 at 8.)  And citing to *Evitts v. Lucey,* 469 U.S. 387, 396 (1985), he continues that "a criminal defendant is entitled to the effective assistance of counsel in his direct appeal." (DE 55 at 8.) Hall mistakenly interprets this case law as requiring counsel to have automatically filed a notice of appeal and then continue to represent him in that appeal through the filing of an appeal brief on the merits or at least an *Anders* brief.  "Here, the Petitioner's arguments are clear and the record in this case speaks for itself in that it clearly shows that trial counsel failed to file a timely notice of appeal, nor did he file an appeal for Petitioner, which is guaranteed by the United States Constitution." (DE 55 at 3.)

Hall refers to Rule 3(a)(1) of the appellate rules which instructs on initiating an appeal of right by filing a notice of appeal within the required time frame. Hall points to this rule

and seemingly interprets it as something that counsel is required to do as part of representing him. "Counsel did not file the Notice of Appeal nor an appeal. Trial counsel has an obligation and is expected to continue on appeal absent extraordinary circumstances. After the entry of an order of judgment, counsel will not be permitted to withdraw from a criminal direct appeal without specific leave from the district court." (DE 55 at 4 (quoting Fed. R. App. P. 36(a)(1).) After discussing Rule 3, Hall states "Petitioner's counsel was supposed to file a Notice of Appeal 14 days after entry of judgment and did not do so. He also did not file an appeal [brief] or an Anders brief. The counsel in question was subsequently reappointed by the Court *to file Petitioner's appeal* after Petitioner had discovered that counsel had not previously done so and he filed his own Pro Se Notice of Appeal on February 4, 2015. [T]hat same day the Court extended the appointment of … Craft as counsel under the Criminal Justice Act for Petitioner." (DE 55 at 5 (emphasis added).) Hall then describes in summary fashion his series of filings with the Sixth Circuit, from his *pro se* notice of appeal to dismissal of the appeal and denial of rehearing. After listing these, Hall states in conclusory fashion that "his right to an appeal has been denied due to ineffective assistance of trial counsel." (DE 55 at 6.)

Hall looks to the case of *United States v. Stearns,* 68 F.3d 328 (9th Cir. 1995) as setting the standard regarding an attorney's failure to file a notice of appeal constituting ineffective assistance. "It is now generally accepted that counsel's failure to file a notice of appeal, either when expressly requested to do so by Petitioner or merely when the Petitioner has not consented to the failure to file, constitutes ineffective assistance of counsel." (DE 55 at 8 (citing *Stearns*).) He goes on to point out that such deficient performance is considered prejudicial *per se.* (*Id.* (citing *Stearns,* 68 F.3d at 330).) But what Hall fails to realize is that *Stearns* was cited in *Flores-Ortega,* and that portion of *Stearns* which calls for mandatory filing of a notice of appeal unless defendant consents not to file a notice, was abrogated in

*Flores-Ortega.  See Flores-Ortega,* 528 U.S. at 478.  This is particularly significant for Hall, given his argument relies upon and is framed to fit an application of *Stearns.*

> Petitioner in this case offers evidence in support that he had no direct contact with his appointed counsel, who filed no notice of appeal, but that he attempted to communicate his express desire to appeal issues regarding the Presentence Investigation Report, and other pertinent matters.  Petitioner had no prior knowledge of counsel's decision not to file a notice of appeal nor appeal brief. The court should hold an evidentiary hearing to determine whether Petitioner consented to his counsel's failure to file a notice of appeal or direct appeal.

(DE 55 at 8-9.) Because the law imposed no obligation on Craft to file a notice of appeal unless Hall expressly consented for him not to file one, Hall's argument is rejected.  Nor does such an argument by Hall warrant holding an evidentiary hearing, as Hall submits it does, to determine if he consented.  (DE 55 at 9.)  Based on *Flores-Ortega,* this prior requirement in *Stearns* of counsel having to seek a defendant's consent not to file a notice of appeal is no longer the applicable legal standard.

As noted above, Hall also asserts Attorney Craft did not file a notice of appeal "as he requested." Hall asserts this in his memorandum in support of his 2255 motion. (DE 55). Therefore, Hall argues that "[t]rial counsel, James Wiley Craft did not file and failed to file Petitioner's Notice of Appeal **as he requested.**  Under Strickland v. Washington, 466 U.S. 668, 80 L.Ed. 2d 674, 704 S.Ct. 2052 he was required to do so." (DE 55 at 4 (emphasis added).) This prompts the question of whether Attorney Craft performed deficiently by not filing a notice of appeal if requested to do so by Hall. Hall states in his memorandum that he "requested" Craft do so.  Like his first argument for why counsel performed deficiently in failing to file a notice of appeal, this second argument is also without merit, for several reasons.

First, beyond using the magic phrase that Hall requested counsel file a notice of appeal, Hall points to nothing to substantiate that he in fact made such a request of his counsel.  That he requested Craft do so is the extent of his factual account.  He does not allege

a specific or express instruction or directive as being given to Craft. Case law suggests stronger, precise language from a defendant is required. For example, *Flores-Ortega* refers to defendant's "specific instructions" and "express instructions" to appeal. *Flores-Ortega,* 528 U.S. at 477, 478; *Rodriquez v. United States,* 395 U.S. 327, 328 (1969) (defendant alleged he "told his counsel to perfect an appeal, but that counsel had failed to do so"); *Regalado v. United States,* 334 F.3d 520, 524-25 (6th Cir. 2003) (although defendant "expressed her desire" or "wishes" to counsel that an appeal be filed, "she did not specifically instruct [counsel] to do so" noting *Flores-Ortega's* language about "specific instructions" and "express instructions" to file an appeal that are not followed by counsel as constituting deficient performance).

In *Ludwig v. United States,* 162 F.3d 456 (6th Cir. 1998), the Sixth Circuit recognized, prior to the clarity the Supreme Court provided in *Flores-Ortega,* that counsel's failure to pursue a direct appeal when in disregard of a defendant's request is constitutionally deficient performance that prejudices a defendant. *Ludwig,* 162 F.3d at 459. But *Ludwig* also emphasized that there must be an "actual request" made by defendant. *Id.* ("We . . . hold that the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment."; "We emphasize, of course, that a defendant's actual 'request' is still a critical element in the Sixth Amendment analysis."; "[T]he Constitution is only implicated when a defendant actually requests an appeal, and his counsel disregards the request."). Even under the arguably less specific language accepted in *Ludwig,* prior to the Supreme Court's more detailed discussion in *Flores-Ortega,* there was still an emphasis within this Circuit of defendant making an actual request. Here, Hall merely states that Craft did not file an appeal and failed to file a notice of appeal "as he

requested" and that Craft "failed to file an appeal … after being requested to do so[3] and did not even file an Anders Brief as required." (DE 55 at 4.)

Put simply, Hall has offered nothing beyond use of the word "request" upon which the Court can conclude that he made *an actual request* of Craft to file a notice of appeal on his behalf.  He has not offered, under the "facts" of his § 2255 motion form or his memorandum in support, any other information or alleged circumstances to support that he actually made this specific request for action by counsel.  In other words, he fails to provide the who, what, when, where, why, and how to substantiate that he told Craft to file a notice of appeal on his behalf. He notes nothing about any conversations or communications he and Craft had on the subject, whether those were in verbal or written form, when those communications occurred, and what specifically was said and by whom. Context is important and Hall provides none of it.  Nor does Hall provide any affidavits from persons who could corroborate that he actually requested Craft file a notice of appeal. And neither does Hall attach any exhibits, letters, or other documents of communications to Craft confirming that he requested Craft file a notice of appeal.

Second, the Government responds that Hall's argument must be rejected because Hall never asked his attorney to appeal.  In support of this conclusion, the Government points to the affidavit from Hall's trial counsel attached to its response. (DE 69 at 4.)  In it, Attorney Craft swears that Hall "never indicated to [him] that he desired for a Notice of Appeal to be filed and it came as a complete surprise to [him] that [Hall] filed his own Notice of Appeal some 60 days after he was sentenced." (DE 69-1 at 1, ¶ 3.)[4]

---

[3] It is unclear here if Hall is referring to Craft failing to file an appeal *brief* after his appointment was continued by the Sixth Circuit Court of Appeal or if Hall is referring to the fact that Craft "failed to file" a notice of appeal after being requested to do so.  (DE 55 at 4.)

[4] The Government also argues that, even if Hall could somehow show deficient performance by counsel in failing to file a notice of appeal, Hall is unable to show that he was prejudiced because Hall waived his right to appeal his conviction and sentence in his plea agreement. (DE 69 at 4 (citing DE 32, plea agreement, at 3, ¶ 8).)

Third, Hall offers no response to counter Attorney Craft's affidavit.  While Hall filed a reply to the Government's response to his § 2255 motion and memorandum (*see* DE 73), he did not address in that reply Attorney Craft's sworn statements that Hall did not indicate to him that he wanted to file an appeal. The § 2255 motion and memorandum providing no details in support of the initial basic allegation that Hall requested Craft file an appeal, the reply was Hall's opportunity to come forth with those further details to counter his former counsel's sworn statements.  He did not do so.

Fourth, although the Court has no obligation to do so, the Court has reviewed the record to find any support for Hall's assertion that he requested Attorney Craft file a notice of appeal and has found none. The case docket is quiet following the November 25, 2014 filing of Hall's Judgment (DE 34) until, on January 30, 2015, shortly after Hall arrived at his initial BOP designated facility, USP Tucson, the District Clerk received a document from Hall entitled "motion" that the Clerk docketed as a notice of appeal (DE 35).  Hall did not state in that construed notice of appeal that he previously requested Attorney Craft file a notice of appeal and Craft failed to do so.[5]

---

The Government's argument regarding prejudice is misplaced.  If counsel has performed deficiently by failing to file a notice of appeal after being directed to do so, prejudice is presumed, *Flores-Ortega,* 528 U.S. at 483, *Winkler v. Parris,* 927 F.3d 462, 465 (6th Cir. 2019), without regard to the probability of success on appeal, *Flores-Ortega,* 528 U.S. at 483; *Ludwig v. United States,* 162 F.3d 456, 459 (6th Cir. 1998).  This is true even where a defendant has entered into a plea agreement wherein appellate rights were waived.  *Garza v. Idaho,* --- U.S. ---, 139 S. Ct. 738, 744 (2019); *Campbell v. United States,* 686 F.3d 353, 359 (6th Cir. 2012).  Regardless, Hall has not demonstrated that he actually requested Attorney Craft file a notice of appeal.

[5] Hall states in that January 30, 2015 "motion" filing (DE 35):

NOW, here comes Earnest Bradley Hall, I wish to inform this court, that I wish to file a direct appeal, appealing certain terms of my SPECIAL CONDITIONS OF SUPERVISION.  I wish to also make changes to my Pre-sentence Report (PSR). I did notify my Attorney James Craft II, of this matter before my sentencing date, I did this in a correspondence after reviewing my (PSR), this.  after the conclusion of my hearing held on 19th day of November 2014, I wish this will be addressed by my court appointed attorney James Craft II, and that he will contact me via, my correctional counselor . . . in Tucson AZ  85756.  To set up a Legal call to voice my grievance to at that time for I am under the impression [from] James Craft II, my case is over with and that he will file any and all appeals including a 2255 motion if necessary.

That notice of appeal was transmitted by the district court clerk to the Sixth Circuit Court of Appeals, which assigned case no. 15-5118 to that appeal. The circuit court at that time also issued a letter extending attorney Craft's appointment for the appeal. (DE 38.)  The Sixth Circuit on February 12, 2015, sent a letter to Hall, that was copied to counsel, enclosing an order noting Hall's notice of appeal appeared untimely and requiring Hall to show cause within 30 days why the appeal should not be dismissed as untimely.  That order also directed the government to reply advising whether it intended to forfeit the late filing of the notice of appeal. *See United States v. Earnest Hall,* No. 15-5118 (Sixth Circuit DE 6-1 & 6-2).[6]  Hall then sent a letter to Judge Thapar, which was postmarked February 18, 2015 and received and entered by the district court clerk on February 23, 2015.  (DE 40.)  That letter provided information about the minor victim in the case, who was 17 at the time of the conduct that resulted in Hall's criminal case. Hall also enclosed a letter dated February 18, 2015, that he sent to his counsel, attorney Craft.  These further communications from Hall to the district court do not reference Hall appealing or assert that Hall requested attorney Craft to file an appeal for him but that Craft did not do so.[7]

---

Thus, Hall indicates in this "motion" that he wants to appeal his supervision conditions and wants to make changes to his PSR, which PSR he had reviewed, marked corrections on, and provided to Attorney Craft prior to his sentencing. Hall apparently learned of purported negative implications associated with his PSR after arriving at the designated federal prison. Specifically, as part of this § 2255 proceeding, on April 5, 2017 Hall sent a letter to the then presiding District Judge enclosing an Amendment to the Facts – Detailed Brief/Report of Real Facts (DE 81), which Judge Thapar ordered be filed as a construed motion for leave to supplement Hall's § 2255 motion (DE 80). The Government was given the opportunity to respond to this motion to supplement and the motion is addressed subsequently herein. In that proposed supplement, Hall states that he noted various errors and corrections on his copy of his PSR which he mailed to his counsel. Hall says that counsel told him he would take care of having the PSR corrected but he did not.  (DE 81 at 66-69.)  Hall further says that when he arrived at the federal prison in Tucson on January 16, 2015, he discovered that counsel had not taken care of correcting the PSR as he had promised before sentencing that he would do. Instead, the PSR was adopted by the Court without change. (DE 80 at 68.) This, according to Hall, meant that the U.S. Marshals Service did not have correct information and therefore made his security designation and custody classification within the Bureau of Prisons higher than it should have been. (DE 80 at 68-69.)

[6] A court may take judicial notice of undisputed information contained on government websites, *Demis v. Sniezek,* 558 F.3d 508, 513 n.2 (6th Cir. 2009), including "proceedings in other courts of record."  *Granader v. Public Bank,* 417 F.2d 75, 82-83 (6th Cir. 1969).

[7] Hall's handwritten letter to Judge Thapar on February 18, 2015 states he encloses a copy of the February 18, 2015 letter to his counsel, given that Craft's appointment has been extended. Hall informs Judge Thapar that "[t]here is a lot of important information I'm trying to bring to your attention. The FBI and U.S. Attorney's Office has tried to deliberately conceal <u>very</u> important information and important evidence that could of really aided me in my case. The gist of it is my fiancé … is the one who done hundreds of crimes and that fact is trying to be deliberately conceal[ed] and hid[den] from the <u>court</u> and <u>public</u>! . . . My fiancé needs to be charged!" (DE 40.)

In the typewritten letter to Attorney Craft, a copy of which is enclosed with the letter to Judge Thapar, Hall writes:

Please fine this a letter of inquiry, suggestiveness and insistent regards as in the guarantees that are my rights, and there-for, as my legal representative, your job mandated responsibilities and obligation.

As in the U.S. Constitution, article 6, the United States Constitution is the supreme law of the land, and all Judges in every court are to uphold and inforce said constitution totally, along with all executive and Judicial Officers, SHALL abide there-by- -which includes you.

In short and in laymen terms, I expect and insist that you make every effort and zelious effort in and for my case.

The gist of this whole shebang is that the arresting agency lied/manipulated and fabricated the truth in a vengeful, discriminate and pregadicial manner, in order and pursuant there of

On February 27, 2015 Hall completed a pro se response to the Sixth Circuit's show-cause order, received and docketed by the circuit court clerk on March 5, 2015. *United States v. Earnest Hall,* No. 15-5118 (Sixth Circuit DE 7). Nowhere in this document, the purpose of which was to explain to the appellate court why the notice of appeal was filed late, does Hall even indirectly assert that the notice of appeal was late because his counsel failed to file it after Hall requested he do so. Rather, Hall makes the following typewritten filing, signed by him under penalty of perjury:[8]

<u>RESPONSE TO SHOW CAUSE ORDER</u>

I, Earnest B. Hall, hereby respond to the Show Cause Order entered on 02/12/15. The Order states that I must show cause within thirty (30) days why my notice of appeal is not untimely.

As a threshold matter, it must be stated that my CJA appointed attorney, Mr. James Wiley Craft II, has been notified that his appointment as counsel is extended. See Docket #3, 02/04/15. Also, I am aware that I am not allowed "hybrid representation" – that is, the right to proceed pro se while also represented by counsel. See <u>Miller v. U.S.</u>, 561 Fed. Appx. 485, 488 (6th Cir. 2014). However, I have received no communication from Mr. Craft and do not know his intent.

---

presenting a malicious effort towards (my) prosecution, - - and in my mind, in the investigation and format of total inquiry and presentation, was 'lacking'.
Please find the following inputs and requests that I have, - - and, as per "LAWYERS RESPONSIBILITY" - - I require assures and input.
    I request 'total discovery and docket papers' - - - to include all papers and input from the State related charges that were dismissed in lue of the Federal charges that were filed because of the (false) State charges.
    There was 'purposeful intent' that were misleading and discriminate and abusive, that flagrantly obstructed the very core and bearing of my human rights and sertancies!!!!!!!
    The evidence used in the original State charge was manipulated and not valid!
The investigation was lacking, the input to the Feds from the state agency was frivolous and discriminatory, and the State testimony was not the truth!!
The evidence that was presented was evidence that was evidence against my accuser, that was shifted to be against me, ----- purposefully and with intent!!!
    Please contact me in regards to this, and lets set up a time to where-as we can talk and be more 'specific' than this IN GENERAL writing.
(DE 40-1 at 1-2.)

[8] At the end of the typewritten response to the show-cause order there is a certificate, labeled "affidavit," wherein Hall "swears under penalty of perjury" that the statements in the response are true and correct. *United States v. Earnest Hall,* No. 15-5118 (Sixth Circuit DE 7 at 4).

Of course this may change, but until it does, I feel the need to respond myself. Therefore it is respectfully requested that this Honorable Court allow my notice of appeal to be considered timely for the following reasons:

1.) I have been, and remain, completely dependent on counsel because I have no training concerning the intricacies of courtroom or appellate procedure or law in general.

**2.) After my sentencing hearing, counsel never mentioned my right to appeal. The only thing he said to me were statements relating his view that I had done "the right thing." Then, later, in a letter, he stated that his services concerning my case were concluded, in effect abandoning me.**

3.) Regardless of counsel's opinion, his responsibilities were not over. After sentencing, the bare minimum of his duties would have been to file an <u>Anders</u> brief and a request for permission to withdraw. <u>Anders v. California</u>, 386 U.S. 738, 18 L.Ed.2d 493, 87 S. Ct. 1396 (1967). "The defendant must be notified and given the opportunity to raise any [ ] point." <u>United States v. Hawkins</u>, 8 Fed. Appx. 332, 334 (6th Cir. 2001) (citing <u>Anders</u>). None of these important steps were taken.

. . . .

To be perfectly frank, I question the willingness of Mr. Craft to present a good faith effort on my behalf, given his apparent wish to 'wash his hands' of this case so quickly.

*Id.* (Sixth Circuit DE 7 at 1-3) (emphasis added). Hall asked that the Sixth Circuit allow his direct appeal to proceed and appoint him new counsel to represent him in his direct appeal. *Id.* (Sixth Circuit DE 7 at 3). Nowhere in this show-cause response does Hall claim his notice of appeal was filed late because he had to file it himself after counsel did not do so despite being requested to.

On March 11, 2015, attorney Craft filed a motion to withdraw with the Sixth Circuit which was granted. *Id.* (Sixth Circuit DE 8; DE 10). The circuit appointed new counsel for Hall on April 3, 2015, for that appeal. *Id.* (Sixth Circuit DE 13). In the interim though, the United States on March 18, 2015, filed its reply to Hall's response to the Sixth Circuit's show-cause order. *Id.* (Sixth Circuit DE 12). Therein, the government argued that Hall had failed

to show why the appeal should not be dismissed as untimely and that dismissal was the appropriate remedy.[9]

A few days later, on April 6, 2015, the Sixth Circuit issued its order dismissing Hall's appeal as untimely, noting dismissal of an appeal as untimely filed is required upon motion of the Government. *Id.* (Sixth Circuit DE 14-2). The Circuit Court's order noted that Hall does not dispute his appeal is untimely and offered in explanation of the untimely filing that "counsel never informed him of his right to appeal or the deadline for doing so."  The order further noted that Hall's remedy is to file a § 2255 motion alleging ineffective assistance of counsel and that he has one year from the date his conviction became final to file such a motion.  *Id.*  On May 7, 2015, Hall filed a typewritten motion with the Sixth Circuit asking for reconsideration of its order and reinstatement of his notice of appeal as timely.  *Id.* (Sixth Circuit DE 15).  He argued that a direct appeal was never filed until he filed his own notice of appeal dated January 22, 2015.[10]  Hall states in that reconsideration motion,

> The reason I make this distinction is to demonstrate my diligence.  I arrived at U.S.P. Tucson on January 16, 2015. When I related to fellow inmates **that I had instructed my attorney to file an** appeal but I had not heard from him or the Court, I was advised to immediately file the Notice myself.  This I did do.
> . . . .
> 1.)  My attorney did not follow the procedures set forth in the Criminal Justice Act (18 U.S.C. § 3006A), to wit, **despite my request to do so** (see attached AFFIDAVIT), he did not file a Notice of Appeal, after sentencing he said his duties toward me and my case were over and done, and he did not follow the procedure set forth in <u>Anders v. California</u>, 386 U.S. 738, 18 L.Ed.2d 493, 87 S. Ct. 1396 (1967).

---

[9]  The Government's reply, in pertinent part, states "Hall's counsel [did not] have an obligation to file a notice of appeal **without Hall's request,** which . . . is not established in the record. *See Ahart v. Bradshaw,* 122 F. App'x 188, 194 (6th Cir. 2005) (holding that counsel's failure to file notice of appeal not unreasonable when, among other things, there is no indication defendant asked him to file an appeal)."  *United States v. Earnest Hall,* No. 15-5118 (Sixth Circuit DE 12 at 2-3) (emphasis added).

[10]  As previously discussed, this pro se notice of appeal was actually what Hall filed as a "motion" that the Court construed to be a notice of appeal.  (DE 35.)

*Id.* (Sixth Circuit DE 15 at 2-3).[11]

It is important to point out that this is the first time in any document that Hall claims he "instructed" his attorney to file a notice of appeal and counsel failed to do so, despite his "request."  It is also important to point out that Hall's new assertion that he instructed and requested that his lawyer appeal is alleged for the first time in May 2015, shortly after the government, in its March 15, 2015 reply to Hall's show-cause response, pointed out that "Hall's counsel [did not] have an obligation to file a notice of appeal **without Hall's request,** which . . . is not established in the record." *Id.* (Sixth Circuit DE 12 at 2-3) (emphasis added). Thus, although Hall does not provide any factual context by affidavit or otherwise to support his statement that he requested counsel file a notice of appeal, review of the district court and circuit court filings does provide context. And it is a context that is not helpful to Hall. Hall did not ever assert that he requested his counsel file an appeal until *after* the point was first mentioned by the government in its appellate show-cause reply.

And finally, Hall's own assertions contradict that he requested attorney Craft file a notice of appeal. While Hall asserts no notice of appeal was filed "as he requested," he also acknowledges in his memorandum in support of his § 2255 motion that he had *no contact* with counsel but *attempted* to tell counsel that he wanted to appeal, that counsel made the decision not to appeal, and that counsel did not have Hall's consent not to file a notice of appeal. (DE 55 at 8-9.) As explained above, this legal position that Hall must consent to counsel *not* filing an appeal is no longer the legal standard after *Flores-Ortega.* And Hall supported that legal argument that he did not consent to not filing an appeal by pointing out that he had no contact with counsel and therefore he could not have consented to forego an

_____

[11] The affidavit that Hall refers to is the certificate at the end of the typed motion for reconsideration document where Hall swears under penalty of perjury to the truthfulness and correctness of the statements and information therein, similar to the "affidavit" with his response to show-cause order.

appeal. But this lack of contact contradicts his claim that he communicated to counsel that he wanted to appeal within the 14-day window after sentencing and filing of his judgment of conviction.

Moreover, Hall's statement in his response to show cause filed with the Sixth Circuit, specifically paragraph 2, also contradicts his claim he requested counsel appeal. *See United States v. Earnest Hall,* No. 15-5118 (Sixth Circuit DE 7 at 2). There, Hall explains that the subject of appeal did not come up after sentencing. It is reasonable to conclude when Hall says that counsel did not discuss his right to appeal, that neither was Hall requesting that counsel file an appeal. It is contradictory to explain a late-filed appeal by saying that counsel never mentioned his right to appeal, yet also assert before this Court that after sentencing Craft was requested to file a notice of appeal and did not do so. Thus, Hall's own statements contradict his other statements that he "requested" or "instructed" counsel to file a notice of appeal.[12]

Moreover, an evidentiary hearing is not warranted on whether Hall requested Craft file a notice of appeal. An evidentiary hearing is warranted when a factual dispute exists, but Hall has failed to sufficiently demonstrate a factual dispute actually does exist for all of the reasons discussed above. While the threshold burden for an evidentiary hearing is light,

---

[12] Whether looking at the motion for reconsideration filed with the Court of Appeals or Hall's § 2255 motion and memorandum later filed with this Court, Hall gives no details about the circumstances surrounding and giving rise to his alleged instruction to counsel to file a notice of appeal. These documents were filed in typewritten form, with Hall swearing to the truthfulness and correctness of the statements and information. Perhaps Hall does not provide context in these documents because the documents were not drafted by him but rather inmate legal assistants who assisted him with presenting his legal arguments.

Hall acknowledges in his filings that he does not always agree with or understand what is prepared for and signed by him. For example, Hall in November 2015 filed a group of documents including a motion for writ of habeas corpus, which this Court construed as Hall's initial § 2255 motion. However, Hall later filed a motion to dismiss that motion for writ of habeas corpus and its incorporated filings, stating that he did not intend for that to be construed as his § 2255 motion to vacate and instead filed that motion for writ of habeas corpus on incorrect advice from an inmate legal assistant. (DE 56 at 1.) And Hall later in a typed reply to the government's response opposing a request by Hall to file a supplement to his § 2255 motion, tries to explain why he should be permitted to file such a late amendment by stating that it has been "necessary [for him] to rely on various 'legal amateurs and lay persons, such as "jailhouse lawyers," who have <u>no formal legal training or qualifications</u>.' <u>Bourdon v. Loughran</u>, 386 F.3d 88, 97 (2nd. Cir. 2004) (emphasis added)." (DE 92 at 5.)

to conclude otherwise in this case would be rewarding a defendant by conducting an evidentiary hearing after mere recitation of the word or phrase—such as "requested" or "instructed" or "informed"—that case law suggests gives rise to a factual dispute for which an evidentiary hearing ordinarily should be conducted.  Under the circumstances of this case, the Court concludes that a fact dispute as to whether counsel was instructed to file a notice of appeal has not been shown, and therefore an evidentiary hearing is not warranted.

Having concluded that Hall has not come forth with a sufficient showing that he requested attorney Craft file a notice of appeal, the Court turns to the other question presented by *Flores-Ortega* – did Craft have a duty to consult with Hall about filing an appeal. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega,* 528 U.S. at 480.  Relevant factors in this inquiry are: 1) whether the conviction follows a trial or guilty plea; 2) whether the defendant received the sentence bargained for; and 3) whether the plea expressly reserved or waived some or all appeal rights.

In Hall's case, he pleaded guilty pursuant to a negotiated plea agreement, thereby reducing the scope of potentially appealable issues and indicating his desire to end judicial proceedings. Hall received what he bargained for inasmuch as he pleaded guilty to one count of the indictment in exchange for the Government dismissing a second count and agreeing not to bring further charges based on additional evidence obtained in the investigation that the Government had in its possession at the time of the plea agreement.  The plea agreement Hall entered into reflected that "the statutory punishment for Count 1 is imprisonment for not less than 15 years and not more than 40 years[.]" (DE 32 at 2, ¶ 4.)  The plea agreement further provided that "[t]he United States and the Defendant jointly recommend that the

18

Defendant be sentenced to a term of 180 months imprisonment with a life term of supervised release to follow." (DE 32 at 3, ¶ 6.) At sentencing, Hall was sentenced to 180 months (*see* DE 34), which is the 15-year minimum required under the statute and the term of imprisonment that the parties in their plea agreement recommended be imposed.

In *Flores-Ortega,* the Supreme Court provides the following as an example of case circumstances where there is no constitutional duty upon counsel to consult with his client regarding an appeal:

> For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," [*Strickland,* 466 U.S.] at 691, 104 S. Ct. 2052, as a constitutional matter, in not consulting with such a defendant regarding an appeal.

*Flores-Ortega,* 528 U.S. at 479. This example is applicable to Hall's circumstances. He pleaded guilty; he was informed of and understood the potential sentence that could be imposed, including a mandatory minimum sentence of 15 years; he and the Government agreed to recommend the minimum sentence of 15 years; and the Court imposed a 15-year term of incarceration. Thus, a rational defendant would not have desired an appeal and Hall did not demonstrate to trial counsel an interest in pursuing an appeal within the 14-day period following his conviction and sentencing. (*See* DE 69-1 at 1, ¶ 3: "[I]t came as a complete surprise to the Affiant that the Defendant filed his own Notice of Appeal some 60 days after he was sentenced.") Therefore, Craft did not have a constitutionally imposed duty to consult with Hall about an appeal.

Hall's second ground in his § 2255 motion, also directed to the subject of appeal, is that trial counsel was ineffective because he failed to file an appeal brief on the merits on

Hall's behalf,[13] or at least an *Anders* brief.  This ground is easily disposed of because Hall does not have a colorable, separate claim for relief under 28 U.S.C. § 2255 based on trial counsel failing to continue to represent him in the direct appeal that Hall untimely initiated *pro se*.  Upon Hall's *pro se* filing of a Notice of Appeal on February 4, 2015, the Sixth Circuit informed trial counsel that his appointment by this Court to represent Hall was extended now that a notice of appeal had been filed.  (DE 38.)  The Sixth Circuit then issued an order for Hall to show cause by a specific date why his notice of appeal was not timely filed.  *See United States v. Earnest Hall,* Case No. 15-5118 (Sixth Circuit DE 6).

Hall proceeded to file a *pro se* response to that show-cause order prior to the deadline for doing so, pointing to alleged deficient conduct of his trial counsel for why he did not timely file a notice of appeal.  *Id.* (Sixth Circuit DE 7).  After Hall did that, and prior to the expiration of the show-cause deadline, attorney Craft filed a motion to withdraw from further representation of Hall on appeal in light of the content of Hall's *pro se* response to the show cause order.  *Id.* (Sixth Circuit DE 8).  The Sixth Circuit granted Craft's motion to withdraw. *Id.* (Sixth Circuit DE 10).  At that point, pursuant to the Sixth Circuit rules, trial counsel was excused from providing further representation and Hall was appointed a new attorney for purposes of that appeal.  *Id.* (Sixth Circuit DE 13). Because Hall was pointing to an alleged failure of his trial counsel as the basis for why his notice of appeal was not timely filed, the appellate court recognized that trial counsel could not continue to represent Hall in that appeal and so permitted counsel to withdraw, but also appointed Hall new counsel.  But before Hall's newly appointed counsel could undertake essentially any representation of him,

---

[13] To the extent Hall's second ground was intended to argue that counsel failed to file *an appeal* or an *Anders* brief, rather than that counsel failed to file an appeal *brief* or an *Anders* brief, the failure to file *an appeal* is essentially the same argument as was raised by Hall in his first ground, which ground was rejected for the reasons set forth hereinabove.

the Sixth Circuit dismissed the direct appeal because the notice of appeal had not been timely filed. The dismissal order noted that "Hall does not dispute that his appeal is untimely, but opposes dismissal because his counsel never informed him of his right to appeal or the deadline for doing so." *Id.* (Sixth Circuit DE 14).[14]

Hall has a right to pursue a direct appeal and to do so through court-appointed counsel if indigent. However, he does not have a constitutional right to have his *trial* counsel pursue that appeal if that counsel has been permitted to withdraw and other counsel appointed. Hall cites to no applicable authority for such a proposition. Hall cannot show that counsel's representation of him was constitutionally deficient for not filing a merits appeal brief or

---

[14] Hall continued to challenge the Sixth Circuit's dismissal of his appeal as untimely. In addition to moving the circuit court for reconsideration, in October 2015 Hall filed a collection of documents with this Court. (DE 45; DE 47—DE 50.) He filed a motion for writ of habeas corpus (DE 45) that incorporated by reference a motion of certiorari in support of clerical error (DE 47), motion to correct clerical error (DE 48), motion to preserve claim of clerical error (DE 49), and writ of mandamus in support of clerical error (DE 50). (DE 45 at 2.) These filings were directed to his complaint that, because of what he characterized as clerical error of the appellate court, his newly appointed appellate counsel was not given adequate time to prepare an extension request or file an appellate brief for him. In these documents filed with this Court, Hall asked that new counsel be reinstated and that he be afforded his right for a "direct appeal" and his right under the "Sixth Amendment" of the "United States Constitution." (DE 50 at 3.)

These filings represent the first post-conviction filings by Hall with this Court that reveal court-appointed trial counsel did not file an appeal as Hall apparently thought would automatically be done (*see* DE 47) or file a notice of appeal and an appellate brief or *Anders* brief for him (*see* DE 48). In the motion of certiorari (DE 47), Hall states that "After this plea, Mr. Hall was informed of his right for a Direct Appeal. I provided a Pro Se Motion, which counselor Craft was to do, ergo, under the framework of Strickland v. Washington, (1984) 466 US 668, 80 L.Ed.2d 674, 704 S. Ct. 2052. This proves ineffective counsel. . . . Counsel James Wiley Craft II did not or failed to file Mr. Hall's Notice of Appeal or even an Anders Brief[.]" (DE 47 at 1.) Here, Hall is pointing out that he had to file his own pro se motion that the Court construed as a notice of appeal when that is something attorney Craft should have already done for him. Hall makes these assertions under the mistaken belief that counsel is obligated to proceed with filing a notice of appeal unless Hall consented not to do so, as analyzed above.

But in the typewritten motion to correct clerical error Hall, under penalty of perjury, says, "Once located within . . . the Bureau of Prisons, he realized that there was no Notice of Appeal filed on his behalf, nor an Anders brief on his behalf. To wit, Mr. Hall had informed his counsel, Mr. James Wiley Craft II, to file this Notice of Appeal. To wit, Mr. James Wiley Craft II did <u>NOT</u> file the proper brief, nor did he file the Notice of Appeal." (DE 48 at 1, ¶¶ 2, 3.) Thus, Hall states in the motion that he "informed" Attorney Craft to file a notice of appeal and he did not.

Because of the arguments raised in these filings, the motion for writ of habeas corpus (DE 45) with its companion documents was docketed by the Clerk as a § 2255 motion. Hall was subsequently ordered to refile his application for writ of habeas corpus on the proper form. (DE 53.) On November 9, 2015 he filed § his 2255 motion on the proper form (DE 54) and also filed his typewritten memorandum in support (DE 55). Hall then filed a motion to dismiss his motion for writ of habeas corpus and filings incorporated therein, stating that he did not intend for that to be construed as his § 2255 motion to vacate and instead filed that writ of habeas corpus on incorrect advice from an inmate legal assistant. (DE 56 at 1.) Those filings (DE 45; DE 47—DE 50) were dismissed upon the Court's adoption of the magistrate judge's recommendation (DE 63).

*Anders* brief when counsel was permitted by the Sixth Circuit to withdraw from the case prior to a briefing schedule being set. Thus, to the extent Hall asserts a separate claim or ground in his § 2255 motion on the basis that trial counsel failed to file a merits appeal brief or *Anders* brief for him, such claim or ground is without merit.

### 2.    Alleged Case Investigation Failure by Counsel

In his third claim, Hall asserts that trial counsel "failed to fully investigate [his] case." (DE 54 at 7 (capitalization omitted).)  Hall offers no factual support for this claim in his § 2255 motion or supporting memorandum. (*See id.*) In his reply brief, he accuses counsel of expressing a "prejudicial attitude towards me and my case because I was gay" and vaguely complains about counsel's purported unresponsiveness and delay in providing him discovery. (DE 73 at 4.)

Hall's summary development of this claim illustrates why it is important for a § 2255 motion to "state the facts supporting each ground." Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 2(b).  "[I]t is not for the court to search the record and construct arguments. Parties must do that for themselves."   *Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017).  Even though Hall is *pro se*, the Court "should not have to guess at the nature of the claim asserted."  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Further, the Court cannot develop Hall's claim for him. *Brenay*, 709 F. App'x at 337 ("[W]hile it may be tempting to flesh out the parties' arguments for them, it is improper for the courts to do so."). Because Hall's § 2255 motion fails to specify what investigation his counsel failed to do and how such investigation would have been material to his defense, he has waived this claim. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) ("This Court has held that a petitioner cannot show deficient performance or prejudice resulting from a

failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material."); *see also Thomas v. United States*, 849 F.3d 669, 679 (6th Cir.), *reh'g denied* (Apr. 27, 2017), *cert. denied*, 138 S. Ct. 261 (2017) ("A party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation.").

### 3.    Alleged Coercing of Guilty Plea by Counsel

In his fourth claim, Hall argues that his trial counsel failed to adequately represent him and coerced him to plead guilty by "telling him he would receive life if not." (DE 54 at 8 (capitalization omitted).)  Hall, to his detriment, has not developed this claim further.[15]

The Court sees two ways to construe Hall's argument. The first is an argument that counsel coerced Hall to accept the plea by threatening that he would receive life in prison under the *indictment* if he did not. The second interpretation is based on defense counsel's affidavit (the Government filed it as part of its response), which asserts as follows:

> There was a discussion between myself and Mr. Hall where I informed him that in a recent phone conversation that I had with the Assistant U.S. Attorney that the Government intended to supersede the indictment to allege a count, that if proven, could result in Mr. Hall receiving a sentence of Life Imprisonment. I informed Mr. Hall that the decision to plead guilty was his and his alone and for him to think about it and contact me with his answer. Mr. Hall then contacted me and informed me that he wanted to enter a guilty plea.

(DE 69-1 at 2-3.) Based on this statement, the Court construes Hall as also possibly arguing that he was coerced into pleading guilty because of counsel's representation that he could face life in prison based on a *superseding indictment*.[16]  Either interpretation of Hall's claim fails.

---

[15] While the claim is not so underdeveloped as to be waived, rarely will a cursorily developed claim lead to a favorable result.

[16] This second variation of the claim is likely the one that Hall intends to offer because in his construed motion to supplement his § 2255 motion, Hall provides the following facts in support of his contention that his counsel coerced him to plead guilty, "Mr. Craft, stated, 'you have to do [plead guilty] otherwise 'they' (the United

First, it is true that "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). However, Hall's own sworn statements at his plea colloquy before Magistrate Judge Edward B. Atkins demonstrate that his plea was not coerced by counsel but was voluntary. *See Underwood v. United States*, No. 18-5793, 2018 WL 7140598, at *2 (6th Cir. Nov. 19, 2018) ("In a collateral attack on a conviction, a transcript of proceedings is generally sufficient to demonstrate that the defendant's conduct was voluntary and knowing.").

> THE COURT:  Sure.  Okay.  Is this your own decision to plead guilty today?
>
> THE DEFENDANT: Yes.
>
> THE COURT:  Okay.  Can you express to me why you want to plead guilty?  I mean, to the extent that you can.
>
> THE DEFENDANT:  In my own words, sir, fear of taking it to trial and a fear of possibility of catching more time.
>
> THE COURT:  Okay.
>
> THE DEFENDANT:  And a fear of being charged with more charges if I do not accept this plea bargain.

(DE 68 at 10.)  Hall stated that he had discussed the case with his attorney and understood what he was being told.  (*Id.* at 11.)  Hall said he had read the indictment, discussed it with counsel, and discussed the case in general, including any defenses. (*Id.* at 12.) Next, Hall was asked:

> THE COURT:  Are you satisfied with the advice that Mr. Craft has been giving you in this case?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Are you satisfied with the way he has represented you?
>
> THE DEFENDANT: Yes, very much.

---

States Assistant Attorney's Office) will indict you with more charges with other evidence they have in their possession' 'you can get life.'"  (DE 81 at 65.)

(*Id.* at 13.)

Regarding the plea agreement, Hall said he had a week to review it with his attorney

before signing it.  (*Id.* at 14.)  He read the agreement and was satisfied that he understood

the terms of the agreement in the document.  (*Id.*)  The United States reviewed the essential

terms of the agreement in open court, after which Hall agreed that the terms had been fairly

summarized. (*Id.* at 15-18.)  The colloquy continued:

> THE COURT:  [The plea agreement and the sealed supplement] reflect all the promises that have been made to you and they reflect all the promises that you've made as part of your plea agreement.  You understand, sir?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Okay. Now, do these documents, in fact, to the best of your knowledge, reflect the entire agreement that you have with the government?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Are there any promises that anyone made to you that are not contained in these documents?
>
> THE DEFENDANT:  No.

(*Id.* at 18.)  After discussing the recommended sentence in the plea agreement of 180 months

of incarceration, Magistrate Judge Atkins continued:

> THE COURT:  So Judge Thapar does not have to impose that sentence on the day of your sentencing.  Do you understand?
>
> THE DEFENDANT:  Yes.
>
> THE COURT: Okay.  Knowing that, has anyone promised you that if you plead guilty in this case, in exchange for that, you will receive a specific sentence of any kind?
>
> THE DEFENDANT:  No.
>
> THE COURT:  Okay.  Has anyone tried to threaten you or coerce you or somehow make you plead guilty against your will?
>
> THE DEFENDANT:  No.

(*Id.* at 19.)  Hall's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  "In light of [Hall's] plea colloquy, his bare claim that his counsel coerced him into pleading guilty is insufficient to overcome the presumption of truthfulness which attaches to statements made during the plea colloquy."  *Tucker v. Berghuis*, No. 1:15-CV-764, 2017 WL 2451574, at *4 (W.D. Mich. May 17, 2017), *report and recommendation adopted sub nom. Tucker v. Berguis*, No. 1:15-CV-764, 2017 WL 2438644 (W.D. Mich. June 6, 2017); *also see Haynes v. Burt*, No. 16-2343, 2017 WL 4404627, at *3 (6th Cir. Mar. 23, 2017) (denying application for certificate appealability on ineffective-assistance claim where habeas petitioner's "own sworn statements contradict his assertion that his counsel pressured him to plead guilty").

Additionally, as to the first construed variation of this claim—that counsel coerced Hall to plead guilty by telling him that he would otherwise receive life imprisonment—it fails under *Strickland*'s prejudice prong. Assuming, *arguendo,* that counsel did tell Hall that he would receive life in prison if he did not plead guilty to the *indictment*,[17] the Court's statement at the plea colloquy, noting that the minimum sentence was 15 years but that the prison term could not be "more than 40 years" (DE 68 at 21) (the statutory maximum) "can be said to have cured any misunderstanding [Hall] may have had about the consequences of his plea." *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999). Thus, Hall cannot claim that he was prejudiced by counsel's performance.

Additionally, the second construed variation of this claim fails—that counsel coerced Hall to plead guilty because a *superseding indictment*, if proven, could lead to life imprisonment. Hall has not shown that counsel's advice was incorrect. And such advice would

---

[17] The fact that Hall's plea agreement noted that the statutory maximum was 40 years makes it wholly unlikely that counsel would have given Hall contrary advice (i.e., advise him that he would receive life in prison). (DE 32 at 2, ¶ 4.)

be "exactly the kind of accurate information regarding sentencing exposure which the defendant must have in order to make an informed decision about whether to accept a plea offer." *United States v. Green*, 388 F.3d 918, 923 (6th Cir. 2004). Moreover, "[t]he fact that [Hall] faced more charges and/or a greater sentence if he proceeded to trial did not amount to coercion." *Tolbert v. Woods*, No. 2:11-CV-14759, 2013 WL 3213127, at *5 (E.D. Mich. June 26, 2013).

### B.    Hall is not Entitled to an Evidentiary Hearing

Hall requests an evidentiary hearing.  Pursuant to Rule 8(a) of the Rules Governing § 2255 Proceedings, "[i]f the motion [to vacate pursuant to 28 U.S.C. § 2255] is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." "When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required 'to determine the truth of the petitioner's claims.'" *Ray v. United States,* 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007)).  A hearing is not necessary where a petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts.  *Huff v. United States,* 734 F.3d 600, 607 (6th Cir. 2013) (citing *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999)).  Additionally, where the alleged defective performance is inconsequential, a hearing is not necessary.  *See id.* at 608.

Here, the briefings on Hall's § 2255 motion present no issues of fact that need to be resolved. As also addressed in the analysis of each claim above, Hall's claims are premised upon incorrect legal standards and/or what facts there are to support the claims are contradicted by the record or inherently incredible. Accordingly, no evidentiary hearing is required and therefore the denial of Hall's § 2255 motion includes his request for an evidentiary hearing.

### C.      Hall's Motions to Supplement his § 2255 Motion

In April 2017, over two years after his judgment of conviction became final and the statute of limitations had run, *see* 28 U.S.C. § 2255(f)(1), Hall filed an "Affidavit Statement of Facts." (DE 81.) The document was construed as a motion for leave to supplement Hall's § 2255 motion and the government was ordered to respond, which it did.  (*See* DE 82; DE 83; DE 86.)  Hall has since replied.  (DE 92.)  In February 2020, Hall again moved to supplement his § 2255 motion. (DE 111.) The government has not responded, and the time to do so has passed.

Although the Court initially construed Hall's first filing (DE 81) as a motion for leave to supplement, upon further review, it and his second filing (DE 111) would be more accurately characterized as motions to amend his § 2255 motion because they seek to add new claims.  *See Michael v. Ghee*, 498 F.3d 372, 386 (6th Cir. 2007) ("A Rule 15(a) motion for leave to amend the complaint, not a Rule 15(d) motion to supplement the pleading, is the appropriate mechanism through which a party may assert additional claims for relief.").

The Federal Rules of Civil Procedure apply to § 2255 motions "to the extent that they are not inconsistent with any statutory provisions or [the Federal Rules Governing § 2255 Proceedings]." Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 12.  "A motion to amend a § 2255 motion is governed by Federal Rule of Civil Procedure 15(a)," *United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016), and "a Rule 15 motion will be denied where it is filed after [the statute of limitations] period expires unless the proposed amendment relates back to the date of the original pleading," *Howard v. United States*, 533 F.3d 472, 475-76 (6th Cir. 2008).

Amendments relate back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out." Rule 15(c)(1)(B).  The Supreme Court has interpreted this language to require "original and amended petitions [to] state claims

28

that are tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005).
Notably, it has flatly rejected prior circuit courts' interpretation that permitted relation back
"so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence."
*Id.* at 656. "If claims asserted after the one-year period could be revived simply because they
relate to the same trial, conviction, or sentence as a timely filed claim, [the Antiterrorism and
Effective Death Penalty Act (AEDPA) of 1996's] limitation period would have slim
significance." *Id.* at 662.

As noted, Hall's § 2255 motion lists four claims: (1) "Ineffective assistance of counsel:
counsel failed to file notice of appeal timely"; (2) "Ineffective assistance of counsel: counsel
failed to file an appeal or an *Anders* brief"; (3) "Ineffective assistance of counsel: counsel
failed to fully investigate the case"; and (4) "Counsel failed to adequately represent client and
coerced client to plead guilty telling him that he would receive life if not." (DE 54 at 5-9
(minor alterations for readability).) The supporting memorandum that Hall filed with his
§ 2255 motion addressed only his first two grounds concerning counsel's failure to file a notice
of appeal. (DE 55 at 4-9.) As previously noted, he offered no factual support for this third
claim alleging that counsel failed to investigate his case and alleged little factual support for
his fourth claim, simply stating that counsel coerced him to plead guilty by telling him he
would otherwise receive a sentence of life imprisonment. (*See* DE 54 at 6, 8.)

Hall's new claims in his first construed motion to amend concern counsel's purportedly
deficient performance by failing to (1) adequately represent him during pre-trial proceedings,
including plea negotiations; (2) investigate evidence; (3) raise jurisdictional arguments and
object to the introduction of evidence; (4) mount a credible defense; (5) raise arguments and
obtain expert testimony regarding his mental health problems; (6) obtain his permission
before waiving the preliminary hearing; (7) raise certain objections to the Government's
presentation of the case; and (8) obtain evidence from his state court case. (DE 81.) Hall's

29

new claims in his second construed motion to amend essentially argue that trial counsel was ineffective for failing to object to the use of a state offense to enhance his potential statutory federal sentence. (DE 111-1 at 5, 9.) However, because none of the claims from either filing stem from the common core of operative facts from his § 2255 motion—counsel's failure to file a direct appeal and purported coercion to plead guilty by telling Hall that he would otherwise receive a life sentence—his claims do not relate back as required by Rule 15(c).[18]  (*See* DE 81.)

Further, while Hall raises new claims about counsel's failure to investigate his case, asserting a variety of facts, the Court agrees with the Government's argument that because Hall failed to offer any factual support in his § 2255 motion for his failure-to-investigate claim, there is no common core of operative facts for his new legal claims and facts to relate back to.  (*See* DE 86 at 3.)  A contrary conclusion would permit an absurd result—allowing a federal prisoner to simply list legal claims devoid of factual support and be rewarded by being permitted to amend a § 2255 motion at a future date without fear of ever violating the statute of limitations. Moreover, the mere fact that the motion lists the same types of legal claim originally asserted in Hall's § 2255 motion—ineffective assistance of counsel—does not entitle Hall to amend his § 2255 motion, as the key consideration is not the legal bases for claims but whether they share a common core of operative facts.  *James v. United States*, No. 2:15-CR-25, 2019 WL 4122189, at *4 (E.D. Tenn. Aug. 29, 2019) ("True, the motion to vacate asserted claims of ineffective assistance of counsel.  Nonetheless, the attorney misstep now alleged is not similar in type to the asserted attorney shortcomings presented in that pleading.").

---

[18] While Hall repeated his allegations that counsel coerced him to plead guilty by telling him that he would otherwise get life in prison, he did not raise a new claim from this argument. Further, the Court considered these repeated allegations in footnote 4.  (*See* DE 81 at 64-5.)

In his reply brief in support of his first construed motion to amend, Hall asserts that he has a traumatic brain injury that causes him "very severe migraine headaches, nose bleeds, dizziness, memory loss, and thought process problems."  (DE 92 at 6.)  He states that his "'severe mental health problems' have made it necessary to rely on jailhouse lawyers." (*Id*.).  To the extent that Hall argues that his "severe mental health problems" can serve as cause to excuse his failure to present his new claims and factual allegations in his § 2255 motion (DE 54), he has offered no legal support for this proposition.

However, "mental incompetence" has been found to be "an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations."  *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011).  Assuming, *arguendo,* that mental incompetence could serve to excuse a federal prisoner's otherwise time-barred amended § 2255 motion because it did not relate back under Rule 15(c), Hall has not made the requisite showing that: "(1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations."  *Id.*  First, as the Sixth Circuit has noted, "patients with chronic severe mental illness often fall short of the threshold" for mental incompetence.  *United States v. Tucci-Jaraf*, 939 F.3d 790, 795 (6th Cir. 2019).  Hall has not shown that his brain injury is responsible for a deep mental breakdown in cognition so as to render him mentally incompetent. *See id.*  Second, he has not specifically "alleged any facts that would suggest that [his] mental illness prevented [him] from timely filing" his amended § 2255 motion. *McSwain v. Davis*, 287 F. App'x 450, 457 (6th Cir. 2008).  Rather, the record shows that Hall was able to pursue his initial § 2255 motion despite his brain injury and included a detailed recitation of the facts leading up to his arrest in his supporting memorandum.  (*See* DE 55 at 2.)  Hall has completely failed to explain why he could remember some facts in detail at that

time but could not remember other facts until his current motion. Thus, the Court concludes that Hall's brain injury is not a reason to permit him to amend his § 2255 motion.

Accordingly, Hall's first construed motion to amend his § 2255 motion (DE 81) and his second construed motion to amend his § 2255 motion (DE 111) will be denied.

## III. CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). When the denial of a motion filed under § 2255 is based on the merits, the defendant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

As discussed above, there is no claim that raises a meritorious issue regarding the Defendant's constitutional rights. Jurists of reason would not conclude that this Court's assessment of any constitutional claims raised by Hall was either debatable or wrong. Accordingly, a certificate of appealability should not issue in this case.

## IV. CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** as follows:

(1)     Hall's construed motion for leave to supplement (DE 81) and "Motion for Leave to File Second Supplemental Pleading" (DE 111), which filings the Court further construes as motions for leave to amend, are **DENIED.**

(2)     Hall's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (DE 54) is **DENIED.**

(3)     Judgment shall be entered contemporaneously with this Order.

(4)     A Certificate of Appealability **SHALL NOT ISSUE.**

Dated November 30, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY